IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:09-CR-045 |
| ) | |
| KEITH PARIS RUFFIN ) | |

## **MEMORANDUM AND ORDER**

Following a four week, seven-defendant jury trial, defendant Keith Ruffin was found guilty on counts one, five, six, and twenty of the third superseding indictment. Now before the court is defendant Ruffin's "Motion for Judgment of Acquittal" [doc. 650]. The government has responded in opposition [doc. 682], and the defendant has not replied. For the reasons that follow, the motion will be denied.

*I.*

*Background & Authority*

The third superseding indictment charged the defendant with conspiring to distribute and possess with the intent to distribute cocaine (count one), conspiring to distribute and possess with the intent to distribute cocaine base (count five), conspiring to money launder (count six), and conspiring to retaliate against an informant and/or tamper with a witness (count twenty). The defendant moved for acquittal at the close of the government's proof at trial, and again at the close of all the proof. Both requests were denied, and the defendant's renewed motion is now before the court.

A Rule 29(c) motion for judgment of acquittal challenges the sufficiency of the evidence. *See* Fed. R. Crim. P. 29(a), (c). When reviewing a sufficiency of the evidence claim, the court "must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). The court does not weigh the evidence, consider witness credibility, or substitute its judgment for that of the jury. *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002). "A defendant making such a challenge bears a very heavy burden." *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000).

*II.*

*Analysis*

A. Witness Credibility

The defendant attacks the credibility of the government's trial witnesses. However, "[s]ufficiency-of-the-evidence appeals are no place . . . for arguments regarding a government witness's lack of credibility." *United States v. Hernandez*, 227 F.3d 686, 694-95 (6th Cir. 2000) (citations and quotations omitted). The defendant's credibility complaints therefore are not grounds for acquittal, nor are his invitations for the court to weigh the evidence against him. *See United States v. Conatser*, 514 F.3d 508, 518 (6th Cir. 2008) (court does not reweigh evidence in deciding a Rule 29 motion).

2

B. Corroboration

The defendant complains that the testimony of certain codefendant and/or "jailhouse" witnesses was not corroborated. However, the court correctly instructed the jurors that the testimony of such witnesses should be considered "with more caution than the testimony of other witnesses. Do not convict a defendant based on the unsupported testimony of such a witness, standing alone, unless you believe their testimony beyond a reasonable doubt." "[I]t is well-settled that uncorroborated testimony of an accomplice may support a conviction in federal court." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999).

C. Sufficiency of the Evidence

As noted, counts one, five, six, and twenty of the third superseding indictment charged that the defendant was a member of conspiracies: to distribute and to possess with intent to distribute five kilograms or more of cocaine; to distribute and to possess with intent to distribute 50 grams or more of cocaine base; to money launder; and to engage in witness tampering and/or retaliation against an informant. As to each count, the government had the burden at trial of proving beyond a reasonable doubt: (1) an agreement to violate the law; (2) knowledge of, and intent to join, the conspiracy; and (3) participation in the conspiracy. *Gardner*, 488 F.3d at 710. A rational jury could easily have found all of these elements satisfied by the proof presented at trial.

During three weeks of proof, the jurors were presented with a substantial amount of wiretap and documentary evidence. The jurors also heard the testimony of codefendant Jamie Rush and investigating agent Brian Vicchio, among others, regarding the nature and extent of codefendant Sunnah Maddox's drug enterprise. Accordingly, a rational trier of fact could easily have found the existence of cocaine and cocaine base distribution conspiracies. Further, based on extensive testimony and wire transfer evidence, a rational trier of fact could have found the existence of a money laundering conspiracy relating to the proceeds of Maddox's unlawful activities. Lastly, based on recorded phone calls involving Maddox as cited at pages five and six of the government's response brief, a rational trier of fact could have found the existence of a conspiracy to retaliate against and/or tamper with codefendant Rush.

The government similarly met its burden regarding the defendant's knowledge, intent, and participation in these conspiracies. Numerous intercepted conversations between Maddox and the defendant were played for the jurors. These conversations evidenced the two men's concerted search for drug suppliers, with the defendant at one point telling Maddox, "I know what you mean, we all in this thing together . . . . You ain't doing it by yourself man." The jurors also heard conversations in which Maddox and the defendant appeared to be discussing the cooking of cocaine base. Further, Rush testified that the defendant traveled to Atlanta with codefendants on at least one occasion to obtain a large amount of cocaine.

4

As to the money laundering conspiracy, the jury heard from financial investigator Lynn Barker. Agent Barker identified five wire transfers sent to Maddox by "Paris King" of Johnson City, Tennessee. The defendant's middle name is Paris. Agent Barker testified that the defendant lived in Johnson City at the time, and the defendant's New York driver's license number was used as identification by the sender.

Regarding the intimidation/tampering conspiracy, the jurors again heard an intercepted conversation between Maddox and the defendant. Therein, Maddox discusses a "universal beat down" and his desire to "physically destroy . . . [and] change that n**** whole face." The defendant responded by informing Maddox that "Son said he done sent the goons out after him. . . . He can't survive out here." Maddox then instructed the defendant to "make sure the n**** get a little physical, too, you know what I mean. . . . Give him a little something to think about." The defendant responded in the affirmative to each instruction.

Based on the sampling of the evidence cited herein, a reasonable juror could have found the essential elements of counts one, five, six, and twenty beyond a reasonable doubt.

D. <u>Prosecutorial Misconduct</u>

The defendant next cites, without any developed argumentation, the fact that "[d]uring the prosecution's closing argument, the prosecutor argued that 'desperate defense

5

lawyers' claim the prosecution witnesses are lying or words to that effect."[1] It is initially noted that arguments raised in favor of acquittal, "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) (citation omitted).

Even if the defendant had not waived this issue, the complained-of comment falls far short of the necessary standard for relief. An inappropriate but isolated prosecutorial comment is not grounds for acquittal. *See United States v. Wells*, 623 F.3d 332, 338 (6th Cir. 2010). The present remark, made in response to attacks on the veracity of prosecution witnesses, is entirely distinguishable from the facts of the sole case cited by the defendant, *United States v. Holmes*, 413 F.3d 770 (8th Cir. 2005), in which the prosecution made repeated "personal, unsubstantiated attacks on the character and ethics of opposing counsel."

### E. Perjury

Paragraph 46 of the defendant's motion is a string citation relating to knowing use of false testimony by prosecutors. The insinuation that perjured testimony was knowingly offered by the government in this case is wholly unsupported and warrants no further discussion. *Layne*, 192 at 566.

### F. Jenks Act / *Brady* / *Giglio*

Lastly, the defendant alleges that at least one "DEA Form 6" report of investigation would have existed for each testifying "codefendant/coconspirator/jailhouse

---

[1] The actual language used was "desperation by Defense Attorneys." [Doc. 677, p. 2520].

snitch-type witness" and that most of these alleged reports were not provided to him, in violation of the Jencks Act. *See* 18 U.S.C. § 3500 (pertaining to prior statements of a witness who has testified for the government). The defendant further argues that it is "also highly likely that the statements of said witnesses would have contained *Brady*/*Giglio* materials, thus giving rise to another violation by the government." *See Brady v. Md.*, 373 U.S. 83 (1963) (disclosure of material evidence favorable to the defendant); *Giglio v. United States*, 405 U.S. 150 (1972) (disclosure of material evidence pertaining to witness reliability).

In response, the government denies that any Jencks, *Brady*, or *Giglio* violations occurred. The government has, however, "out of an abundance of caution," attached to its response six DEA-6 forms that were not disclosed to the defense due to purported inadvertence. Each form is signed by Agent Vicchio. Four of the reports pertain to information provided by Agent Bill Mitchell and codefendants Ebberts or Rush. The fifth and sixth reports pertain to Agent Vicchio's investigation of codefendant Carr.

The court has reviewed the six reports individually and collectively and finds no merit to the defendant's arguments. The prosecution's representation that the nondisclosure was inadvertent is believed. To the extent that any of the forms were Jencks material as to Agent Vicchio, the court does not find that the defendant was prejudiced by the nondisclosure of their contents. *See, e.g., United States v. DeFranco*, 30 F.3d 664, 667 (6th Cir. 1994). The court similarly finds nothing exculpatory or inconsistent in the reports that would warrant *Brady* or *Giglio* relief. Further, the defendant has failed to meet his

7

burden of proving that any other Jencks Act material exists, *see United States v. Fletcher*, 295 F. App'x 749, 753 (6th Cir. 2008); *United States v. Grecni*, Nos. 90-3483, 90-3571, 1991 WL 139703, at *5 (6th Cir. July 30, 1991), or that he timely moved for Jencks Act material. *See* 18 U.S.C. 3500(b).

In addition, the court deems it most significant that after being provided with these six reports the defendant chose not to file a reply brief developing his Jencks, *Brady*, or *Giglio* arguments. Again, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Layne*, 192 F.3d at 566-67. Having reviewed the six investigative reports individually and collectively, the court concludes that the defendant's Jencks, *Brady*, and *Giglio* arguments are without merit or substance. The defendant's failure to file a reply brief simply bolsters that decision.

*III.*

*Conclusion*

For the reasons provided herein, the defendant's "Motion for a Judgment of Acquittal" [doc. 650] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

       s/ Leon Jordan
United States District Judge